IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:22-cv-01600-SKC-MEH

NEIL MISNER, and
LINDA TECUMSEH,

    Plaintiffs,

v.

ALPHA PROPERTY & CASUALTY INSURANCE COMPANY,

    Defendant.

## ORDER RE: MOTION FOR SUMMARY JUDGMENT (DKT. 16)

The legal premise of this case arises from a fundamental misinterpretation of the Federal Motor Carrier Act of 1980 and its governing regulations (collectively "the Act"). Pertinent here, the Act requires that motor vehicles for hire operating in interstate commerce and weighing over 10,001 pounds be insured for at least $750,000. *See* 49 C.F.R. § 387.303(b)(2). According to Plaintiffs, the Act places the burden on "insurance carriers to provide policies with no less than $750,000 of coverage and a form MC-90 insurance endorsement on a Class 3 truck operating in interstate commerce." Dkt. 1 at ¶22. But, this reading strains credulity and does not conform with the plain language of the statute, the regulations, or the clear weight of authority from other jurisdictions that have considered this question. It is against this backdrop that the Court considers the following undisputed material facts.

1

## UNDISPUTED MATERIAL FACTS

On May 22, 2019, Marc Guerrero was making deliveries on behalf of Asa Griego Deliveries, LLC ("Griego"), when he crashed his truck into the back of Cody Nozhackum's car. Mr. Nozhackhum and his passenger, Amy Misner, were killed on impact. It is undisputed that the Griego delivery truck was being used in interstate commerce and weighed more than 10,001 pounds.[1] Thus, this vehicle falls under the purview of the Act.

At the time of the accident, Defendant Alpha Property & Casualty Insurance Company ("Alpha") insured the delivery truck under a commercial vehicle policy with liability limits of $100,000 per person and $300,000 per accident. It is further undisputed that Griego did not seek to purchase a policy from Alpha for more than these amounts.[2] *See* Dkt. 16 at ¶¶2-3, 11.

---

[1] The parties dispute whether Alpha knew or had reason to know that the delivery truck was covered by the Act. The Court does not address this issue because even if Alpha did know the vehicle weighed more than 10,001 pounds and was being used in interstate commerce, it would still be entitled to summary judgment because the statute places no duty on insurance companies.

[2] Plaintiffs dispute this fact because Defendant has not cited evidence in the record to support its assertion that Griego never sought a larger insurance policy. Dkt. 20 at p.5. Evidence of a negative, however, is often difficult to find. To be sure, Rule 56 contemplates such a predicament in that support for a factual position can be accomplished by showing "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). Here, Defendants point out a lack of evidence, and Plaintiffs have offered none in response. Thus, it is undisputed that Griego never requested a policy with larger limits.

2

Plaintiffs Linda Tecumseh and Neil Misner—Mr. Nozhackhum's mother and Ms. Misner's husband, respectively—filed suit against Mr. Guerrero, Griego, and others, in Larimer County District Court. They settled that case for $100,000 each and an assignment of the right to seek reformation of the Alpha insurance policy against Alpha. Thereafter, Plaintiffs filed this declaratory judgment action and argue the Act requires the Court to reform the Alpha insurance policy and increase the liability limits to $750,000. Alpha seeks summary judgment in its favor. Dkt. 16.

The Court has jurisdiction over this matter under 28 U.S.C. § 1332 because there is complete diversity among the parties and the amount in controversy exceeds $75,000. Having carefully reviewed the Motion, the related briefing and exhibits, and applicable law, the Court concludes no hearing is necessary. For the following reasons, the Motion is granted.

## STANDARD OF REVIEW

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). "[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)).

## ANALYSIS

Alpha contends it is entitled to summary judgment because it had no reason to know the delivery truck was subject to the Act and even if it did, the Act does not provide the remedy Plaintiff seeks. Because the Court agrees with the second contention, it need not address the first.

In both their Complaint and Response, Plaintiffs cite several cases for the proposition that insurance policies must conform to statutory mandatory minimums, and where they do not, Colorado law permits reformation. *See* Dkt. 20 at p.9. While this is not a controversial statement of law, it is inapplicable here. The statutory schemes in Plaintiffs' cited cases place the burden directly on the insurance companies to provide certain types or amounts of coverage. *See e.g., Richardson v. Farmers Ins. Exch.*, 101 P.3d 1138 (Colo. App. 2004) (evaluating Colo. Rev. Stat. § 10–4–609(1)(a), which prohibits *insurance companies* from issuing automobile insurance policies with bodily injury or death limits less than $25,000); *Brennan v. Farmers Alliance Mut. Ins. Co*, 961 P.2d 550 (Colo. App. 1998) (reforming policy where statute required *insurance companies* to provide personal injury protections to pedestrians). But those statutes are not at issue in this case. Instead, the question in this case is whether the Act similarly places a duty on an insurance company to guarantee a motor carrier obtains the required minimum amounts of insurance. The answer is no.

"A plain reading of the [Act and its regulations] indicates that they place the burden of compliance on the motor carrier not on the insurer." *Brewer v. Maynard*, No. 2:02-0048, 2007 WL 2119250, at *2 (S.D.W. Va. July 20, 2007). The stated purpose of the regulations "is to create additional incentives *to motor carriers* to maintain and operate their vehicles in a safe manner and to assure *that motor carriers maintain an appropriate level of financial responsibility* for motor vehicles operated on public highways." 49 C.F.R. § 387.1 (emphasis added). Both state and federal courts are in consensus, and this Court agrees that the Act does not create a duty of compliance for insurance companies. *See Carolina Cas. Ins. Co. v. Est. of Zinsmaster*, No. 1:06-CV-33-TS, 2007 WL 670937, at *5 n.1 (N.D. Ind. Feb. 27, 2007), *aff'd sub nom. Carolina Cas. Ins. Co. v. Est. of Karpov*, 559 F.3d 621 (7th Cir. 2009) ("The Motor Carrier Act is not an insurance statute, and it is not [the insurer's] duty to make sure that the companies it insures comply with its provisions."); *Shelter Ins. Co. v. Gomez*, 306 Neb. 607, 620, 947 N.W.2d 92, 101 (2020) ("[C]ompliance with the minimum financial responsibility requirements is the responsibility of the motor carrier, not the insurer."); *Howard v. Quality Xpress, Inc.*, 989 P.2d 896, 899 (Ct. App. N.M. 1999) (declining reformation where "the regulatory scheme appears to place the burden of compliance with the compulsory insurance coverage requirements upon the motor carrier, not the insurer"). Tellingly, Plaintiffs have not cited one case wherein a court has reformed an insurance policy under the Act.

Moreover, as a matter of policy, it would be a perverse outcome to require an insurance company to bear the additional financial responsibility for an accident when it was the insured who was derelict in its duty to maintain proper coverage. *Illinois Cent. R. Co. v. Dupont*, 326 F.3d 665, 669 (5th Cir. 2003) ("The motor carrier is in the best position to know the nature of its business and the legal requirements for conducting that business."). To be sure, Colorado law recognizes that absent a special relationship between the insured and the insurer's agent, an insurance company has no affirmative "duty to advise, guide, or direct a client to obtain additional coverage." *Kaercher v. Sater*, 155 P.3d 437, 441 (Colo. App. 2006).

The Court recognizes the tragic nature of this case and is sympathetic to Plaintiffs' search for compensation for their otherwise immeasurable losses. In this instance, however, they seek recourse via an avenue that is unavailable to them as a matter of law.

\* \* \*

For the reasons shared above, the Motion for Summary Judgment is GRANTED.

DATED: July 18, 2024

BY THE COURT:

S. Kato Crews
United States District Judge

6